KEVIN MILLER,                    )
     Plaintiff,                )
                      )
     v.                        )     CAUSE NO.: 2:15-CV-291-PRC
                      )
DEBRA G. ROSADO and              )
JOHN J. WERNERT,                 )
     Defendants.               )

## OPINION AND ORDER

This matter is before the Court on (1) Plaintiff's Second Motion for Summary Judgment [DE 53], filed by Plaintiff Kevin Miller on September 12, 2016, and (2) Defendant's[sic] Cross-Motion for Summary Judgment [DE 73], filed by Defendants Debra Rosado and Dr. John J. Wernert on December 5, 2016. The motions were fully briefed on January 18, 2017. On June 23, 2017, the Court ordered additional briefing on the issue of Eleventh Amendment immunity, the briefing of which was complete on July 28, 2017.

## PROCEDURAL BACKGROUND

Plaintiff Kevin Miller filed his Complaint, pro se, against Debra Rosado (Administrative Law Judge) and Joseph Moser (Director of Medicaid for Indiana) on August 5, 2015. With the Complaint, Plaintiff filed Exhibits 1, 2, 3, and 4. Plaintiff filed a First Amended Complaint on November 3, 2015. On December 7, 2015, Defendants filed a Motion to Dismiss for failure to state a claim.

On December 21, 2015, Plaintiff filed a Motion for Summary Judgment, including a 23-page Exhibit. (ECF 25). That date, Plaintiff also filed a sworn Declaration, dated December 15, 2015, in support of the Motion for Summary Judgment. (ECF 26). On January 7, 2016, the Court stayed the

briefing on Plaintiff's Motion for Summary Judgment pending a ruling on Defendants' Motion to Dismiss.

On April 4, 2016, the Court granted in part and denied in part the Motion to Dismiss, dismissing without prejudice Plaintiff's Americans with Disabilities Act and Rehabilitation Act claims. Plaintiff's procedural due process claims brought under 42 U.S.C. § 1983 remain pending.

Defendants filed an Answer on April 21, 2016.

On April 28, 2016, the Court denied without prejudice and with leave to refile Plaintiff's Motion for Summary Judgment and set discovery deadlines.

On September 12, 2016, Plaintiff filed the instant Second Motion for Summary Judgment, citing Exhibits 1, 2, 3, and 4 submitted with his Complaint. *See* (ECF 53; ECF 1-1, 1-2, 1-3, 1-4). The Court stayed briefing on the Second Motion for Summary Judgment to allow for rulings related to discovery.

On September 16, 2016, the Court substituted Dr. John J. Wernert, Secretary of the Indiana Family Social Services Administration (FSSA), for Joseph Moser, Director of Medicaid for Indiana, as the correct supervisory government official for Plaintiff's claim.

On December 5, 2016, Defendants filed the instant Cross Motion for Summary Judgment and a combined brief in support of their Cross Motion for Summary Judgment and in response to Plaintiff's Second Motion for Summary Judgment.

On January 3, 2017, Plaintiff filed a response to the Cross Motion for Summary Judgment and a reply in support of his Second Motion for Summary Judgment.

On January 18, 2017, Defendants filed a reply in support of their Cross Motion for Summary Judgment.

On June 23, 2017, the Court issued an Opinion and Order setting a schedule for the parties to brief the issue of Eleventh Amendment immunity in this case. Defendants filed their brief on July 7, 2017. Plaintiff filed his response brief on July 21, 2017, and Defendants filed their reply brief on July 28, 2017.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure require that a motion for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56 (a), (c). The moving party may discharge its initial responsibility by simply

3

"'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Spierer*, 798 F.3d at 507-08; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013).

"Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(c)(1), (e); *Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1986)). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-50.

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to

evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## PLAINTIFF'S EVIDENTIARY OBJECTION

On January 3, 2017, Plaintiff filed an "Objection to Evidence," (ECF 82), in which Plaintiff objects to Defendants' submission of the recording of the April 9, 2015 hearing before ALJ Rosado and Defendants' submission of the transcript of that recording. Plaintiff asserts that the recording is not the original, that the recording Defendants submitted changes the outcome of the hearing in the record, and that "[t]his is not the Plaintiffs April 9, 2015 recording of the hearing and the transcript is not original either." (ECF 82, p. 2). However, Plaintiff does not state what was changed, he does not state that the voice on the recording is not his, and he offers no evidence (such as a declaration or affidavit) in support of these assertions. The Court has listened to the recording, and the transcript accurately transcribes the recording. It appears that this objection is based on the fact that ALJ Rosado restarted the recording once Kathryn Houseworth was present for the hearing and on Plaintiff's misunderstanding that the case was going to be "remanded," although the word "remand" was never used at the hearing, as discussed in more detail below. (ECF 78-1, Ex. AA). To the extent Plaintiff objects that Defendants submitted a copy, rather than the original, of the recording and transcript for purposes of the summary judgment, to submit an accurate copy of the recording is not improper. Plaintiff has not shown that Defendants will be unable to produce an original or authenticated copy. *See* Fed. R. Civ. P. 56(c)(2). The Court **OVERRULES** Plaintiff's objection.

# MATERIAL FACTS[1]

*1.    Applications for Medicaid Disability*

On March 25, 2013, the Indiana Family and Social Services Administration (FSSA) sent Plaintiff Miller a "Pending Verifications for Applicants/Recipients" form in his case number 1056017336, giving him a deadline of April 8, 2013, to submit proof of "Unearned Income." (ECF 77-2, Ex. B). All subsequent applications and notices relevant to this case and outlined below, other than related to an appeal, are in Plaintiff's same case number 1056017336. Also on March 25, 2013, FSSA sent Plaintiff a separate "Pending Verifications for Applicants/Recipients" form in the same case number, giving Plaintiff a deadline of April 8, 2013, to submit proof of "Bank Accounts/Financial Holdings." (ECF 77-3, Ex. C).

Beginning May 1, 2013, Plaintiff was approved by FSSA for Medicaid Disability with a monthly "spend-down amount." (ECF 77-4, Ex. D). Beginning November 1, 2013, Plaintiff was eligible for Medicaid without a spend-down due to a decrease in income. (ECF 77-5, Ex. E).

On January 16, 2014, FSSA mailed Plaintiff a notice that it was time to review his eligibility for SNAP benefits (previously known as "food stamps") and for medical coverage. *See* (ECF 77-6, Ex. F). The notice informed Plaintiff that a telephone interview was scheduled for February 6, 2014, at 9:30 a.m. *Id*. The notice further explained that the SNAP benefits would end effective March 1, 2014. *Id*.

---

[1] In his Second Motion for Summary Judgment, Plaintiff cites "the evidence presented and previously submitted in the case exhibits 1, 2, 3, 4 and the brief filed in support of this motion." (ECF 53). Plaintiff's Exhibits 1-4 are attached to Plaintiff's Original Complaint. *See* (ECF 1). In addition, Plaintiff filed his written responses to Defendants' discovery requests as required by Northern District of Indiana Local Rule 26-2, and those documents are before the Court as part of the record. *See* (ECF 43); Fed. R. Civ. P. 56(c)(3).

On February 25, 2014, Plaintiff executed a "Summary of Eligibility Information Client Certification for Food Stamps" form, which provided redetermination information. (ECF 77-7, Ex. G).

On May 28, 2014, FSSA mailed Plaintiff a notice that, effective July 1, 2014, Plaintiff's Medicaid would be discontinued because his "condition has improved significantly. It is no longer considered to be substantial enough to satisfy the definition of disability in state rules." (ECF 77-8, Ex. H, p. 2) (citing 405 I.A.C. § 2-2-3). The same notice indicated that his SNAP benefits would continue without change, explained his right to appeal, and provided an appeal form. *Id*.

On June 5, 2014, FSSA issued a "Notice - Receipt of Appeal" with appeal number 4000287250, informing Plaintiff that his appeal had been received and that he would be sent a hearing scheduling notice. (ECF 77-9, Ex. I).

On June 6, 2014, FSSA sent Plaintiff a "Notice of Hearing" in his appeal in case number 4000287250 (which arose from his Medicaid Disability case number 1056017336), setting the hearing for July 15, 2014, at 1:30 p.m. (ECF 77-10, Ex. J) (citing 42 C.F.R. § 431.200 et seq./405 I.A.C. § 1.1-1 et seq.). The notice explained how to request a continuance of the hearing, including that good cause must be shown under 470 I.A.C. § 1-4-3(j) or 405 I.A.C. § 1.1-1-3(d), that the request be made in writing, that the request be made known to all parties, and that the request include two suggested hearing dates acceptable to all parties. *Id*. The notice warns that failure to appear at the scheduled hearing with no advance notice will result in a dismissal of the appeal. *Id*.

On June 27, 2014, FSSA received a note from Plaintiff asking to reschedule his July 15, 2014 hearing because his attorney was "unwilling to go that day." (ECF 77-11, Ex. K). Plaintiff requested that the hearing date be rescheduled for July 21, 2014, or July 25, 2014. *Id*. On July 25, 2014, FSSA mailed Plaintiff a "Notice of Dismissal" that provided: "The appeal request in this matter is

dismissed. The appellant did not appear at the scheduled hearing and no evidence of good cause for failure to appear has been offered." (ECF 77-12, Ex. L).

On August 4, 2014, FSSA sent Plaintiff an "Important Notice About Your Benefits," explaining that, effective September 1, 2014, Plaintiff's Medicaid benefits would be discontinued due to "implementation of hearing decision" and because Plaintiff's "condition has improved significantly. It is no longer considered to be substantial enough to satisfy the definition of disability in state rules." (ECF 77-13, Ex. M, p. 2) (citing Ind. Code § 12-15-28-7; 405 I.A.C. § 2-2-3). Plaintiff's SNAP benefits were not affected.

On November 24, 2014, Plaintiff reapplied for Medicaid in the same underlying Medicaid Disability case number 1056017336. *See* (ECF 77-14, Ex. N, p. 2).

On December 4, 2014, FSSA mailed Plaintiff a notice titled "Verificaciones Pendientes Para Postulantes/Beneficiaros - Healthy Indiana Plan." (ECF 77-15, Ex. O). The notice was in Spanish. *Id.*

On December 19, 2014, FSSA mailed Plaintiff a form titled "Pending Verifications for Applicants/Recipients," requesting information from Plaintiff. (ECF 77-16, Ex. P); (ECF 43-1, pp. 84-85). The forms gave Plaintiff until January 2, 2015, to provide the documents. (ECF 77-16, Ex. P); (ECF 43-1, pp. 84-85). The notice warns that a failure to provide the information will result in the benefits being denied or discontinued. (ECF 77-16, Ex. P); (ECF 43-1, pp. 84-85). The form asks Plaintiff to provide proof of "Shelter Expense," "Identity," "Bank Accounts/Financial Holdings," "Vehicles," "Lump Sum Payment," and "Notice Regarding Rights and Responsibilities." (ECF 77-16, Ex. P); (ECF 43-1, pp. 84-85).

On January 12, 2015, FSSA sent Plaintiff an "Important Notice About Your Benefits." (ECF 77-14, Ex. N); *see also* (ECF 43-1, p. 102-108). The Notice informed Plaintiff that his November

24, 2014 application for Medicaid was denied because "individual does not have a social security administration (SSA) disability determination or social security disability insurance (SSDI)/Supplemental Security Income (SSI) application on file," "failure to cooperate in verifying the value of resources," "failure to provide all required information," "value of resources exceeds program eligibility standard," and "income exceeds program eligibility standards." (ECF 77-14, Ex. N., p. 2); (ECF 43-1, p. 102).

On January 15, 2015, Plaintiff reapplied for Medicaid Disability in the same case number. *See* (ECF 1-1, pp. 7, 8); (ECF 1-3). On January 21, 2015, FSSA sent Plaintiff an "Appointment Notice," informing Plaintiff that he was scheduled for a phone interview on January 28, 2015, at 8:15 a.m. (ECF 77-18, Ex. R); (ECF 43-1, p. 156).

On January 28, 2015, FSSA sent Plaintiff a one-page "Pending Verifications for Applicants/Recipients," requesting that Plaintiff provide proof of "Shelter Expense," "Bank Accounts/Financial Holdings," "Summary of Eligibility Redetermination Information," "Client Certification for Food Stamps," and "Notice Regarding Rights and Responsibilities." (ECF 1-3, p. 7). The notice gave Plaintiff until February 10, 2015, to submit the information. *Id*.

On January 28, 2015, FSSA sent Plaintiff a two-page "Pending Verifications for Applicants/Recipients," requesting that Plaintiff provide proof of "Bank Accounts/Financial Holdings," "Vehicles," "Life Insurance," "Unearned Income," "Lump Sum Payment," and "Release of Medical Information." (ECF 43-1, pp. 158-59, 160). The notice gave Plaintiff until February 10, 2015, to submit the information. *Id*. at pp. 158, 160.

On January 30, 2015, FSSA sent Plaintiff a separate one-page "Pending Verifications for Applicants/Recipients," requesting that Plaintiff provide proof of "Requirement to File for Social

Security Disability Benefits." (ECF 1-3, p. 6). The notice gave Plaintiff until March 2, 2015, to submit the information. *Id.*

On March 2, 2015, FSSA sent Plaintiff a notice informing him that the Medicaid Medical Review Team (MRT) had determined that Plaintiff did not meet the Medicaid Disability criteria. (ECF 77-19, Ex. S); (ECF 77-20, Ex. T); (ECF 1-3, p. 9). The notice further provided: "This is *not an official notice of denial. This letter serves as a piece of the official notice that will be sent to you when the Division of Family Resources takes action on your case. That notice will explain your appeal rights.*" (ECF 77-19, Ex. S) (emphasis added); (ECF 77-20, Ex. T); (ECF 1-3, p. 9). The March 2, 2015 MRT notice explained that Plaintiff stated in his application that he was disabled due to bodily injury (knee, arm, wrist, back, and neck); that the medical evidence indicated a diagnosis of "ruptured or herniated disc"; and that the MRT evaluated medical evidence from the dates 10/2/2013 – 11/19/2015 from Dr. Julian Ungar-Sargon. (ECF 77-19, Ex. S); (ECF 77-20, Ex. T); (ECF 1-3, p. 9). The notice states that Plaintiff was considered "not disabled" and an explanation is given: "Your impairment is considered to last for a continuous 12 month period; however, the social and medical information that was submitted does not confirm that your condition substantially impairs your ability to perform labor, services, or engage in a useful occupation." (ECF 77-19, Ex. S); (ECF 77-20, Ex. T); (ECF 1-3, p. 9).

On "March 4, 2015," FSSA sent Plaintiff a letter informing him that it had tried to contact him on "March 9, 2015, and on March 10, 2015," concerning Plaintiff's DFR Mailbox correspondence. (ECF 77-21, Ex. U); (ECF 1-3, p. 8); (ECF 43-2, p. 1). The letter provides:

> Per our records it indicates that you were denied for Medicaid Disability by our Medical Review Team on 03/02/2015. *You should have received a notice in the mail and if you do not agree with the decision [that] was made by our Medical Review Team you do have the right to appeal the decision that was made.*

However; you were approved for another category of medical in[sic] which will start effective 04/01/2015 in[sic] which is our new HIP 2.0 medical coverage. You should receive further information in the mail concerning your coverage for that category.

(ECF 77-21, Ex. U) (emphasis added); (ECF 1-3, p. 8) (same).

On March 5, 2015, FSSA sent Plaintiff an "Important Notice About Your Health Coverage" in relation to his January 15, 2015 application, advising him that he was approved for the Healthy Indiana Plan (HIP) Plus program. (ECF 77-22, Ex. V).

In his sworn Declaration, Plaintiff states, "I called in and complained. In March of 2015 I was waiting for the official denial because it comes with the appeal form. The denial never came so I had wrote my own appeal letter. I wasn't sure it was sufficient so I sent in a old food stamp appeal form." (ECF 26, p. 3, ¶ 6). "I didn't get an appeal letter so I couldn't appeal the denial." *Id*. p. 4, ¶ 9b.

On March 17, 2015, FSSA received Plaintiff's handwritten "Appeal Request" with the case number 1056017336 written at the top. (ECF 1-3, p. 12); (ECF 43-2, p. 6); *see also* (ECF 77-23, Ex. W, p. 5). The appeal provides: "I wish to appeal the action to deny, stop or reduce my Benefits. I am appealing my denial of Medicaid Disability Insurance Case #1056017336. I understand that a fair hearing will be scheduled for me and that I will be able to explain why I disagree with the action taken on my benefits." (ECF 1-3, p. 12).

On March 20, 2015, FSSA received a computer-generated "Appeal Form" for Plaintiff in the same case, dated March 19, 2015, which also states that Plaintiff "wishes to appeal the action to deny stop or reduce my benefits. . . . I understand that a fair hearing will be scheduled for me and that I will be able to explain why I disagree with the action taken on my benefits." (ECF 1-3, p. 13). The "Date of Notice" on the "Appeal Form" is March 5, 2015. *Id*.

*2.      April 9, 2015 Hearing*

On April 9, 2015, an administrative hearing was held on Plaintiff's appeal.   (ECF 77-23, Ex. W). Defendant Debra J. Rosado was the Administrative Law Judge who presided over the hearing. *Id*. at p. 8; (ECF 78-1, Ex. AA, p. 1). Kathryn Houseworth represented the State of Indiana. *Id*.

ALJ Rosado used a hand-held tape recorder to record the hearing. (ECF 78-2, Ex. BB, pp. 11-12). ALJ Rosado started the recorder when Plaintiff came into the hearing room before she started asking him questions. *Id*. Plaintiff then told ALJ Rosado about getting injured at work, that he was homeless, and that FSSA did not use all his medical records. *Id*. ALJ Rosado decided to look for some information on the internet. *Id*. While Plaintiff was looking for the web address to give to ALJ Rosado, ALJ Rosado saw one of Plaintiff's papers notifying him that he had been approved for the Healthy Indiana Plan. *Id*. When Houseworth came on the phone, ALJ Rosado stopped and then restarted the tape recording. *Id*.

After the recording was restarted, ALJ Rosado noted that Plaintiff received adequate and timely notice of the action on January 12, 2015, but that the Hearings and Appeals department received his request for a hearing on March 17, 2015, which was untimely as it was past the thirty-three days allowed for a medical appeal. (ECF 78-1, Ex. AA, p. 2). ALJ Rosado asked Plaintiff why his appeal was late. *Id*. Plaintiff responded that he only became aware of the denial after he received the March 2, 2015 notice from the Medical Review Team. *Id*.

Houseworth stated that the official notification from FSSA was never mailed to Plaintiff. *Id*. at p. 4.

Then the following exchange occurred between ALJ Rosado and Plaintiff:

ALJ:    Okay. So then, I am going to address the issue that the notice – the last official notice that was sent was January 12th and the day you appealed was on March the 17th, which is untimely. But, I also need to ask you, Mr.

12

> Miller, do you waive your right to proper notification, in which case it means that the State will not be sending you the notice telling you that your impairment and all that information from the Medical Review Team, and if you do waive your right to proper notification, then the appeal that you filed is basically untimely. So you may want to get that notice.
>
> KEVIN MILLER:     Okay, so I don't want to waive it, waive my right.
>
> ALJ:   Okay, if you don't waive your right to official notice, then the hearing is going to be dismissed and you'll be receiving a – a notice from the state telling you that – the reason you were denied.
>
> KEVIN MILLER:     And then I'll have a right to appeal?
>
> ALJ:   And then you'll have your rights to appeal.
>
> KEVIN MILLER:     Thank you, your honor.
>
> ALJ:   Is that what you want?
>
> KEVIN MILLER:     Yes.

(ECF 78-1, Ex. AA, p. 4-5).

Houseworth then asked ALJ Rosado to repeat the action that was being taken, and ALJ Rosado stated:

> ALJ:   The hearing is going to be dismissed, the Appellant is . . .
>
> KATHRYN HOUSEWORTH: Okay.
>
> ALJ:   . . . not waiving his right to proper notification, so a decision, I mean, a decision will be sent to both parties and it will instruct the State as to what they need to do which is basically to send him the notification…
>
> KATHRYN HOUSEWORTH:          Right.
>
> ALJ:   . . . as to why his medical disability application was denied. And then he will . . .
>
> KATHRYN HOUSEWORTH:          Okay.
>
> ALJ:   . . . have full appeal rights at that point."

*Id*. at p. 6.

3.    *The Hearing Decision*

On May 14, 2015, ALJ Rosado issued a written "Notice Hearing Decision." (ECF 1-3, p. 15); (ECF 43-2, pp. 54-59); (ECF 77-23, Ex. W, p. 5). The Hearing Decision states that the "Issue" for the hearing was: "The original issue under appeal was the Appellant's eligibility for Medical Assistance to the Disabled ("MA D"); however, this issue was not addressed as the only issue was determined to be whether the Appellant received timely and adequate notice." (ECF 1-3, p. 15); (ECF 43-2, p. 55); (ECF 77-23, Ex. W, p. 5). The decision then provides, in a separate delineated section:

> The Administrative Law Judge has carefully reviewed the testimony presented at the hearing, all evidence, Federal/State regulations, and policy transmittals in regard to this matter. The Decision, which follows, outlines the facts and conclusions therefrom that are the basis for the final determination by the Administrative Law Judge.
> **THIS MATTER IS DISMISSED**.

(ECF 1-3, p. 15); (ECF 43-2, p. 55); (ECF 77-23, Ex. W, p. 5).

After setting out twelve paragraphs of "Findings of Fact," the Hearing Decision provides the following "Conclusions of Law":

> This matter is dismissed since the Appellant was not issued timely and adequate notice *in regards to the Medicaid disability criteria denial* of Medical Assistance to the Disabled.
>
> Since the Appellant did not waive his right to timely and adequate notice, the original issue in regards to the denial of Medical Assistance to the Disabled taken against the Appellant with respect to his resources and income were not addressed.
>
> The State Agency is directed to mail out to the Appellant a manual or computer-generated notice informing him of the denial of Medical Assistance to the Disabled due to not meeting the Medicaid disability criteria.
>
> The Appellant shall retain all rights of hearing and appeal of the new notice of eligibility.

(ECF 43-2, p. 56) (emphasis added); (ECF 77-23, Ex. W, p. 8) (same).[2] The section titled "Decision" provides: "The Administrative Law Judge dismisses this matter as there was no timely and adequate notice given to the Appellant as required under 45 CFR 205.10(i)(A)(B). (ECF 43-2, p. 56); (ECF 77-23, Ex. W, p. 8).[3] Page 5 of the Hearing Decision is titled "Appeal Rights," explaining the rights of appeal for ALJ Rosado's decision and the procedure to follow for the appeal. (ECF 1-3, p. 17); (ECF 43-2, p. 59); (ECF 77-23, Ex. W, p. 9).

On May 15, 2015, FSSA sent Plaintiff an "Eligibility Notice of Action Medicaid/Hoosier Healthwise" (State Form 1110 (R13/2-14) FI 0619M) in his same case number 1056017336 regarding the application date of November 24, 2014. (ECF 1-3, p. 20). On page one, the box for "Your application was denied" is checked. *Id*. The "Reason for denial" is "Disability is not met; is 12 mo. but not substantail[sic] impairment; failure to provide all required information; failure to cooperate in verifying the[sic]." *Id*. Only page one of the seven-page document is attached as an exhibit to Plaintiff's original Complaint, and Defendants have not provided a copy of any part of this notice.

On May 19, 2015, Plaintiff faxed a handwritten correspondence dated May 18, 2015, which states: "I Kevin Miller request a Agency Review of my Administrative Law Judges decision. 1056017336/MA D/01/A3-4000378714." (ECF 1-3, p. 18).

On June 3, 2015, FSSA sent Plaintiff a letter, notifying him that they received the request for a review of the May 14, 2015 Hearing Decision in 1056017336/4000378714 and that "[a]ll parties will be sent a Notice of Final Agency Action when the review is complete." (ECF 1-3, p. 19).

---

[2] This page is missing from the exhibit attached to the Complaint. *See* (ECF 1-3, pp. 15-17).

[3] This page is missing from the exhibit attached to the Complaint. *See* (ECF 1-3, pp. 15-17).

On June 16, 2015, FSSA issued a "Notice of Final Agency Action," affirming ALJ Rosado's May 14, 2015 Hearing Decision. (ECF 25-1, p. 1). The Notice advised Plaintiff of his right to appeal this final agency decision by asking a court to review the matter. *Id.*

After the April 9, 2015 hearing, Plaintiff did not apply for Medicaid again. *See* (ECF 78-2, Ex. BB, p. 17).

## ANALYSIS

This is a § 1983 action brought by pro se Plaintiff Kevin Miller who alleges that his Fourteenth Amendment due process rights were violated in relation to his application for Medicaid Disability. The claims remaining in this case following the Court's April 4, 2016 ruling on the Motion to Dismiss are Plaintiff's § 1983 Fourteenth Amendment Due Process claims based on (1) ALJ Rosado restarting the audio recording of the hearing, (2) ALJ Rosado allegedly stating different outcomes at the April 9, 2015 hearing and in her written May 14, 2015 Hearing Decision, and (3) FSSA only allowing Plaintiff to submit twelve months of medical evidence in support of his Medicaid Disability claim. For the reasons set forth below, the Court grants summary judgment in favor of Defendants on all remaining claims.

The due process clause of the Fourteenth Amendment to the United States Constitution provides that the states shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. To prevail on his claim for a deprivation of procedural due process based on a property right, Plaintiff must establish (1) a cognizable property interest, (2) a deprivation of that property interest, and (3) a denial of due process. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (citing *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004)). There is no loss of property without due process if the state

provides an adequate post-deprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540 (1981).

Medicaid "is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, — U.S. —, —, 132 S. Ct. 2566, 2581 (2012). Medicaid requires that states provide assistance to a needy individual with a disability who meets certain qualifications. *See* Ind. Code § 12-14-15-1. This is commonly referred to as "Medicaid Disability" or "Medicaid for the Disabled" ("MA D"). *See Thompson v. Roob*, 1:05-CV-636, 2006 WL 2990426, at *1 (S.D. Ind. Oct. 19, 2006). An individual can be found to be a "needy individual with a disability" if the person has "[a] physical or mental impairment, disease, or loss that is verifiable by a physician licensed under IC 25-22.5, that appears reasonably certain to result in death or to last for a continuous period of at least twelve (12) months without significant improvement, *and* that substantially impairs the individual's ability to perform labor or services or to engage in a useful occupation." Ind. Code § 12-14-15-1(2)(A) (emphasis added). Indiana FSSA's Medicaid Medical Review Team ("MRT") is responsible for determining whether an applicant is eligible for Medicaid Disability under this standard. *See* Indiana Medicaid for Providers, Review Team (MRT), Overview, http://provider.indianamedicaid.com/about-indiana-medicaid/member-programs/special-programs/medical-review-team-(mrt).aspx (last visited August 3, 2017).

The parties do not dispute that eligibility for Medicaid Disability benefits is a "property" interest within the meaning of the Due Process Clause. *Thompson*, 2006 WL 2990426, at *6;[4] *Coffey v. Xerox Corp.*, No. 1:13-CV-97, 2014 WL 773202, at *9 (S.D. Ind. Feb. 24, 2014) (citing *Hamby v. Neel*, 368 F.3d 549, 560 (6th Cir. 2004); *Mathews*, 424 U.S. at 340). Nor do the parties dispute that Plaintiff was found to be not eligible for Medicaid Disability benefits on March 2, 2015. Thus, to establish a violation of procedural due process, Plaintiff must show that he was deprived of his property interest in Medicaid Disability without due process of law. *Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 939 (7th Cir. 2003).

### A. Due Process Claims Against ALJ Debra Rosado Based on the Restarting of the Tape Recording and on the Alleged Difference Between the Outcome Announced at the Hearing and the Outcome in the Written Decision

The Court begins with the two claims against ALJ Rosado, finding that there is no genuine issue of material fact and that Plaintiff cannot demonstrate a due process violation by ALJ Rosado.[5]

---

[4] The court in *Thompson v. Robb*, explained:

> We find that Plaintiffs have adequately articulated a claim to a property interest to which due process protections apply. As they point out, the Indiana "MA D" eligibility statute (IC § 12-14-15-1) "establish[es] 'substantive predicates' to govern official decision making . . . [and] mandate[s] the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462 (1989); Pls.' Reply at 4. The Indiana statute states that "MA D" benefits shall be granted to a needy disabled individual who meets specified and objective criteria; it provides for no discretion on the part of the administrative agency, thus establishing an entitlement to "MA D" benefits for any individual who qualifies.
>
> The Supreme Court has stated that "[i]n the Medicare and the Medicaid Programs the Government has provided needy patients with both direct benefits and indirect benefits. The direct benefits are essentially financial in character . . . . The Government cannot withdraw these direct benefits without giving the patients notice and an opportunity for a hearing on the issue of their eligibility for benefits." *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 787-88 (1980). *See also Goldberg v. Kelly*, 397 U.S. 254, 261-64 (1970); *Gomolinsky v. Davis*, 716 N.E.2d 970, 973-75 (Ind. Ct. App. 1999) (applying procedural due process protections to Indiana Medicaid benefits). Such direct benefits are at issue here. Thus, in our view, the "MA D" eligibility provision creates a protectible property interest.

No. 1:05-CV-636, 2006 WL 2990426, at *6 (S.D. Ind. Oct. 19, 2006).

[5] "While a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist." *Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003); *see also Stachowski v. Town of Cicero*, 425 F.3d 1075 (7th Cir. 2005) (citing *Veterans Legal Defense Fund*, 330 F.3d at 941). Regarding the decision of ALJ Rosado, it appears that Plaintiff was afforded all

*1.* *Tape Recording*

First, Plaintiff alleges that ALJ Rosado violated his due process rights because she restarted the recording device. *See* (ECF 17, pp. 2-3). This was not a due process violation. ALJ Rosado initially started the hand-held recording device when Plaintiff entered the hearing room; this was not improper. Plaintiff explains that he began telling ALJ Rosado about his claim *before* the hearing began, which would have been on the original recording. (These substantive matters that Plaintiff discussed before the hearing began were ultimately not addressed at the hearing or in the hearing decision because the hearing and decision turned on the procedural issue of Plaintiff not having received proper notice.) The FSSA representative—Ms. Houseworth—was not yet present. Once Ms. Houseworth was present for the hearing, ALJ Rosado then restarted the recording. In other words, the recording of the hearing started when both parties were present for the hearing. There can be no violation of Plaintiff's rights regarding the hearing when the hearing had not yet begun until Ms. Houseworth was present.

The Indiana state statute governing the conduct of administrative proceedings provides that "[t]he adminstrative law judge shall regulate the course of the proceedings in conformity with any prehearing order and in an informal manner without recourse to the technical, common law rules of evidence applicable to civil actions in the courts." Ind. Code § 4-21.5-3-25(b). The statute further requires that the ALJ "afford to all parties the opportunity to respond and conduct cross-

---

the process that he was due because he had an opportunity to appeal ALJ Rosado's May 14, 2015 decision and availed himself of that opportunity by appealing the decision on May 18, 2015. *See* (ECF 1-3, p. 18). On June 3, 2015, Plaintiff was notified that his appeal of the May 14, 2015 decision was received. (ECF 1-3, p. 19). And, on June 16, 2015, FSSA issued a "Notice of Final Agency Action" affirming ALJ Rosado's May 14, 2015 Hearing Decision. (ECF 25-1, p. 1). The Notice advised Plaintiff of his right to appeal the final agency decision by asking a court to review the matter. *Id.* There is no indication that Plaintiff filed a petition for judicial review pursuant to Indiana Code § 4-21.5-5-1, et seq. However, because Defendants did not seek summary judgment on the claims against ALJ Rosado on this basis, the Court nevertheless considers each substantive claim in turn. As set forth below, neither constitutes a due process violation.

examination." Ind. Code § 4-21.5-3-25(c). ALJ Rosado complied with Indiana state statute by recording the hearing, Ind. Code § 4-21.5-3-25(g), and by keeping a record of the proceeding, Ind. Code § 4-21.5-3-14(a). And, the Indiana statute prohibits ex parte communications: "[A]n administrative law judge serving in a proceeding may not communicate, directly or indirectly, regarding any issue in the proceeding while the proceeding is pending, with: (1) any party; . . . . without notice and opportunity for all parties to participate in the communication." Ind. Code § 4-21.5-3-11. Plaintiff has not explained how the restarting of the tape once all parties were present for the hearing violated his due process rights.

Because the hearing did not start until both parties were present, ALJ Rosado did not violate Plaintiff's due process rights when she restarted the tape recording at the moment when both parties were present for the hearing. To the extent this claim is also brought against Defendant FSSA, summary judgment is granted in favor of FSSA on this claim for the same reasons.

2.    *Oral Ruling v. Written Decision*

Second, Plaintiff alleges that ALJ Rosado violated his due process rights by announcing a different ruling at the April 9, 2015 hearing than the one written in the May 14, 2015 Hearing Decision. There was no due process violation in relation to the outcome of the hearing because there is no inconsistency between the oral and written rulings. Plaintiff alleges in his Complaint and Amended Complaint and continues to argue in his briefs that ALJ Rosado "remanded" his case at the end of the hearing. *See* (ECF 1, pp. 2-3); (ECF 17, pp. 2-3); (ECF 54, p. 14). However, the word "remand" was not used at the hearing by ALJ Rosado. Rather, ALJ Rosado used the word "dismissed" both at the April 9, 2015 hearing and in the May 14, 2015 Hearing Decision. At both the hearing and in the written decision, ALJ Rosado explained that Plaintiff's appeal was being dismissed because he did not receive proper notice of the March 2, 2015 MRT decision, that FSSA

would be directed to send him the proper notice, and that he would then be able to appeal the March 2, 2015 MRT determination. Contrary to Plaintiff's assertion, the April 9, 2015 hearing and the May 14, 2015 Hearing Decision do not have different outcomes; the word "remand" was never used.

At the hearing, Plaintiff explained that he became aware of the decision to deny his January 15, 2015 application for benefits when he received the March 2, 2015 MRT notice. (ECF 78-1, Ex. AA, p. 2); *see also* (ECF 77-19, 20, Exs. S, T). The FSSA representative, Ms. Houseworth, testified that the official notice following the MRT determination was never mailed to Plaintiff. (ECF 78-1, Ex. AA, p. 4). ALJ Rosado confirmed with Plaintiff that he did not waive his right to get proper notice of his right to appeal the March 2, 2015 MRT denial. (ECF 78-1, Ex. AA, pp. 2, 4-5). ALJ Rosado explicitly found that FSSA had erred by not sending Plaintiff official notification of the March 2015 MRT decision. Thus, ALJ Rosado ordered FSSA to send Plaintiff the official notice of the March 2015 MRT decision and indicated that Plaintiff would retain his full rights to appeal. At the hearing, ALJ Rosado confirmed that Plaintiff understood that this was a favorable ruling:

> ALJ: Okay, if you don't waive your right to official notice, then the hearing is going to be dismissed and you'll be receiving a – a notice from the state telling you that – the reason you were denied.
>
> KEVIN MILLER: And then I'll have a right to appeal?
>
> ALJ: And then you'll have your rights to appeal.
>
> KEVIN MILLER: Thank you, your honor.
>
> ALJ: Is that what you want?
>
> KEVIN MILLER: Yes.

(ECF 78-1, Ex. AA, p. 4-5). Thus, Plaintiff understood at the time of the hearing that the hearing was being dismissed and that he would retain his right to appeal once he received the proper notice.

This is consistent with the May 14, 2015 Hearing Notice which provided:

21

This matter is dismissed since the Appellant was not issued timely and adequate notice in regards to the Medicaid disability criteria denial of Medical Assistance to the Disabled.

Since the Appellant did not waive his right to timely and adequate notice, the original issue in regards to the denial of Medical Assistance to the Disabled taken against the Appellant with respect to his resources and income were not addressed.

The State Agency is directed to mail out to the Appellant a manual or computer-generated notice informing him of the denial of Medical Assistance to the Disabled due to not meeting the Medicaid disability criteria.

The Appellant shall retain all rights of hearing and appeal of the new notice of eligibility.

(ECF. 77-23, Ex. W, p. 8). Plaintiff has offered no evidence that ALJ Rosado used the word "remand" at the April 9, 2015 hearing. There is no inconsistency between ALJ Rosado's statements at the hearing and in her written hearing decision, and ALJ Rosado did not prevent Plaintiff from appealing the adverse decision of the MRT. There is no due process violation by ALJ Rosado. Thus, the Court grants summary judgment in favor of ALJ Rosado on this claim. To the extent this claim is also brought against FSSA, summary judgment is granted in favor of FSSA on this claim for the same reasons.

### B. § 1983 Due Process Claims Against Dr. John Wernert in his Official Capacity— Eleventh Amendment Immunity

Plaintiff's remaining § 1983 procedural due process claim seeks injunctive relief against Defendant Dr. John Wernert, in his official capacity, for an alleged violation of Plaintiff's due process rights in relation to the denial of Plaintiff's application for Medicaid Disability. Plaintiff argues that he should have been permitted to present evidence from a longer time period.

In reviewing the cross motions for summary judgment, the Court *sua sponte* raised the issue of Eleventh Amendment immunity as to this claim and ordered the parties to brief the issue. *See* (ECF 89 (citing *Higgins v. Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000) ("We conclude . . . that

a federal court can raise an Eleventh Amendment defense on its own initiative."); *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) (addressing Eleventh Amendment immunity on appeal after "[t]he defendants engaged in two rounds of litigation in [the] case—one before the district court, and one before this court—without raising the Eleventh Amendment as a defense")).

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "If properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Ind. Prot. & Advocacy Servs.*, 603 F.3d at 370. There are three primary exceptions to Eleventh Amendment immunity: when

> (1) "Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so through a valid exercise of its power"; (2) a state "has properly waived its immunity and consented to suit in federal court"; and (3) the plaintiff "seek[s] prospective equitable relief for ongoing violations of federal law . . . under the *Ex Parte Young* doctrine."

*Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002) (quoting *Marie O. v. Edgar*, 131 F.3d 610, 614-15 (7th Cir. 1997)); *see also Council 31 of the Am. Fed. of State, Cnty. and Municipal Employees, AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012). As for the first two exceptions, Congress did not abrogate a state's Eleventh Amendment immunity to suit under § 1983, *see Quern v. Jordan*, 440 U.S. 332, 340-41 (1979), and Indiana has not waived its immunity.

As for the third, the *Ex Parte Young* exception provides that a plaintiff can bring suit against individual state officials in their official capacity for prospective relief to enjoin ongoing violations of federal law. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Council 31*, 680 F.3d at 882; *Ind.*

*Prot. & Advocacy Servs.*, 603 F.3d at 371. Determining whether the exception applies requires a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland Inc. v. Public Serv. Comm. of Maryland*, 535 U.S. 635, 645 (2002); *see also Sonnleitner*, 304 F.3d at 717. Defendant Dr. Wernert, as the head of the FSSA and sued in his official capacity, is the appropriate target for a claim for prospective injunctive relief, even though the FSSA is an arm of the state. *See Ex Parte Young*, 209 U.S. 123. However, Plaintiff cannot satisfy the *Ex Parte Young* exception in this case because, although he alleges a violation of federal law, he cannot show an "ongoing" violation of that federal law. An entirely past deprivation of procedural due process is not an "ongoing" violation for purposes of the exception. *See Sonnleitner*, 304 F.3d at 718-19; *Ceria M. Travis Academy, Inc. v. Evers*, No. 16-CV-593, 2016 WL 4098587, at *5 (E.D. Wis. July 28, 2016) (citing *Sonnleitner*, 304 F.3d at 718).

In *Sonnleitner*, the court held that the plaintiff's allegation of a Fourteenth Amendment procedural due process deprivation was not an "ongoing violation" when his claim was based on a prior alleged demotion without adequate due process. *Id.* The court found that, even assuming the plaintiff's "constitutional rights have been violated, the violation was not the demotion as such, but, instead, the fact that the demotion occurred without an adequate opportunity to be heard, either through an additional predisciplinary hearing or a sufficiently prompt post-disciplinary hearing." *Id.* The court found this to be a *"past* rather than an ongoing violation of federal law" and held that the *Ex Parte Young* exception did not apply. *Id.*

Similarly, in *Ceria M.*, there was no question that the plaintiff had alleged a violation of federal law by alleging a violation of Fourteenth Amendment due process based on the denial of a request for a payment. 2016 WL 4098587, at *5. The plaintiff argued that the violation was

"ongoing" for purposes of applying the *Ex Parte Young* exception because "[the defendant] 'continues to violate the Fourteenth Amendment as long as he continues to hold [plaintiff's] property without the benefit of a hearing to determine whether [the defendant] is entitled to that property.'" *Id*. Relying on *Sonnleitner*, the court found that the due process violation in *Ceria M* ——"withholding the May payment without an adequate opportunity to be heard"—was not an "ongoing violation." *Id*. The court reasoned that the denial was a "one-time" event that occurred in the past and that there were no allegations as to future payments. *Id*. The court held that *Ex Parte Young* did not apply to avoid Eleventh Amendment immunity in that case. *Id*.

As in both *Sonnleitner* and *Ceria M.*, the alleged constitutional violation in this case occurred in the past. Like in *Sonnleitner*, it is not the denial of Plaintiff's application for Medicaid Disability but, rather, that the denial occurred without an adequate postdeprivation remedy that is the alleged constitutional violation. Even assuming that Plaintiff did not get the official notice of the March 2, 2015 MRT denial from FSSA, as ordered by ALJ Rosado in her May 14, 2015 Hearing Decision, and that Plaintiff's constitutional rights were violated as a result, the violation occurred in the past and is not ongoing. Thus, the *Ex Parte Young* exception does not apply to overcome Eleventh Amendment immunity as to this claim in this case. The Court grants summary judgment in favor of Defendant Dr. John Wernert in his official capacity as Secretary of FSSA on this claim.

### C. Other Allegations in Plaintiff's Amended Complaint

In their Motion for Summary Judgment, Defendants note three other allegations by Plaintiff in the Amended Complaint and argue that those allegations are undeveloped, that Plaintiff does not allege that they constitute due process violations, and that they could not be due process violations. In the interests of thoroughness, the Court considers each in turn.

First, Plaintiff alleges in his Amended Complaint that he received conflicting information from FSSA on March 25, 2013, resulting in his Medicaid being terminated on July 25, 2014. (ECF 17, p. 2). As noted by Defendants, the information in the two March 25, 2013 notices were not conflicting but rather requested that Plaintiff provide proof of different information. One notice required Plaintiff to provide proof of his unemployment check, *see* (ECF 77-2, Ex. B), while the other notice required Plaintiff to provide proof of his retirement account, *see* (ECF 77-3, Ex. C). There is no conflict and no potential due process violation. Moreover, these two documents did not result in the discontinuation of Plaintiff's Medicaid benefits in July 2014; rather, Plaintiff's Medicaid benefits were discontinued because his condition improved significantly, which is unrelated to his unemployment check or his retirement account. *See* (ECF 77-8, Ex. H, p. 2). The Court grants summary judgment in favor of Defendants on these allegations.

Second, Plaintiff alleges in the Amended Complaint that, after reapplying for Medicaid on November 24, 2014, he received documents in Spanish on December 4, 2014, and was denied Medicaid on January 12, 2015. Notably, Plaintiff does not allege in his Amended Complaint or argue in his briefs on these motions that receiving the documents in Spanish was related to the denial of his benefits on January 12, 2015. Although FSSA initially mailed Plaintiff a document in Spanish on December 4, 2014, requesting that he provide proof of certain documents, *see* (ECF 77-15, Ex. O), on December 19, 2014, FSSA sent Plaintiff the notice in English, *see* (ECF 77-16, Ex. P). A comparison of the two documents shows that the "comments" section under each checked category of proof required on both the Spanish and English forms (Shelter Expense, Identity, Bank Accounts/Financial Holdings, Vehicles, Lump Sum Payment, and Notice Regarding Rights and Responsibilities) is typed in English and requests the identical information. *Compare* (ECF 77-15, Ex. O), *with* (ECF 77-16, Ex. P). The only difference is that the Spanish form requests that Plaintiff

sign, date, and return the medical release form OMPP3512S. The proof requested in the December 19, 2014 form in English was due by January 2, 2015. The January 12, 2015 Notice of Denial lists numerous reasons that Plaintiff is not eligible; his denial was not based on a failure to return the signed and dated OMPP3512S form. (ECF 77-17, Ex. Q). Notably, the January 12, 2015 Notice indicates that Plaintiff's "income exceeds the program eligibility standards." (ECF 77-17, Ex. Q, p. 2). Moreover, at the April 9, 2015 Hearing, ALJ Rosado noted that Plaintiff did not timely appeal the January 12, 2015 decision. There was no due process violation in having sent Plaintiff a notice in Spanish, which can only be described as a clerical error that was rectified and that had no substantive effect on Plaintiff's application for Medicaid Disability. The Court grants summary judgment in favor of Defendants on these allegations.

Third, Plaintiff alleges in his Amended Complaint that the denial of his right to Medicaid Disability has "obstructed medical evidence in my social security claim now going on four years." (ECF 17, p. 3). In response to Defendants' Interrogatories, Plaintiff states that he "was unable to show medical conditions in my social security claim. The only physical medical evidence in my social security decisions was from my knees." (ECF 78-2, Ex. B, Interrog. Resp. 22). However, Plaintiff alleges no facts in his Amended Complaint nor offers evidence of record on summary judgment to suggest that FSSA has obstructed evidence in his social security determination.

It appears from Plaintiff's Second Motion for Summary Judgment that Plaintiff's position is based on a misunderstanding of the interplay between the Social Security Administration and the FSSA in relation to the determination of disability for purposes of supplemental security income benefits. In his Second Motion for Summary Judgment, Plaintiff writes:

> 42 CFR 435.541 et seq. requires MRT to determine disability. As of June 1, 2014 FSSA *determines disability for everything except SSI* pursuant to the Social Security

Programs Operation Manual at https://secure.ssa.gov/poms.nsf/lnx/0501730060 including SSDI.

(ECF 54, p. 9) (emphasis added); *see also* Social Security Administration, Program Operations Manual System (POMS), SI 01730.060 Medicaid Information by Regions, https://secure.ssa.gov/poms.nsf/lnx/0501730060 (last visited August 3, 2017).

The POMS webpage cited by Plaintiff provides, in relevant part:

**2. State of Indiana**

The following describes the State's Medicaid program:

   •**Name of Administering State Agency**

Indiana Family & Social Services Administration (FSSA)

   •**Medicaid Determination**

Effective June 1, 2014, SSA makes determinations for SSI recipients. The State makes determinations for all other groups.

   •**Additional Medicaid Questions**

Effective June 1, 2014, SSA obtains answers to the question regarding third party coverage on the application and at all redeterminations. SSA does not obtain answers to the question regarding unpaid medical expenses.

   •**Medicaid Referrals**

When SSA does not make determinations of eligibility for Medicaid, refer those SSI claimants to the local county Division of Family Resources (DFR) for a Medicaid eligibility determination. Refer to regional Supplements for any additional referral instructions.

https://secure.ssa.gov/poms.nsf/lnx/0501730060 (last visited August 3, 2017). Thus, this section only describes which entity makes *Medicaid* Determinations for certain groups of individuals, including supplemental security income recipients, in Indiana. Plaintiff appears to have understood this description to mean that FSSA makes other determinations, such as his social security

determination, which is not the case. Rather, the Disability Determination Bureau handles the gathering of documents for the Social Security Administration for determining disability for supplemental security income benefits. *See* Ind. Code §§ 12-8-1.5-16, 17. To the extent that Plaintiff is bringing a separate claim based on these allegations, the Court grants summary judgment in favor of Defendants on this claim.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant's[sic] Cross-Motion for Summary Judgment [DE 73] and **DENIES** Plaintiff's Second Motion for Summary Judgment [DE 53]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendants Debra Rosado and Dr. John J. Wernert and against Plaintiff Kevin Miller.

So ORDERED this 4th day of August, 2017.

s/ Paul R. Cherry_____
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT